JUAN RODRIQUEZ v. THE STATE.

No. 2035. Decided November 13, 1912.

**1.—Murder—Jury and Jury Law—Bill of Exceptions.**

Where the complaint to the organization of the jury was not verified in any way and no bill of exceptions was reserved, the same could not be reviewed on appeal.

**2.—Same—Sufficiency of the Evidence.**

Where defendant was convicted of murder in the second degree and the evidence sustained a conviction for murder in the first degree, there was no error.

**3.—Same—Charge of Court—Threats—Malice.**

Where, upon trial of murder, the court gave a charge on self-defense in connection with defendant's special charge, which presented every theory of defense, there was no error in the court's failure to charge on threats, in view of the declaration of defendant that they would do one another up; which was admitted to show malice.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted for the murder of one Will Armstrong, by the grand jury of Frio County, and upon a change of venue it was carried to the Thirty-Seventh District Court of Bexar County, and there tried. Appellant was convicted of murder in the

second degree and his punishment assessed at confinement in the penitentiary for the term of ten years.

The crime alleged occurred in 1903. Immediately after the killing of Armstrong by appellant he escaped into Mexico and was not arrested until some five or six years after the killing.

J. C. Campbell testified that on the evening before the killing that night, appellant and a Mexican boy by the name of Mateo Andrada were at his store, which was only a short distance from the place of Wm. Armstrong's; that appellant stated to him (Campbell) that he was going to Wm. Armstrong's place; that Armstrong owed the boy Andrado some money and that he (appellant) was going over there to make Bill settle with the boy and he stated that if he did not pay the boy "we will do one another up." Campbell states that he told appellant not to talk that way; that it would get him into trouble; that he saw appellant leave the store going in the direction of Bill Armstrong's house. He repeated the statement of appellant "that they would do one another up" and that he told appellant he would have to get out of the store or cut it out. This was about sun down when this conversation occurred.

There were only two eyewitnesses to the killing, to wit, Tom Armstrong, cousin of the deceased, and the boy Andrada. Tom Armstrong testified that after dark about eight or nine o'clock at night appellant came to his camp near deceased's house, where some Mexicans who were working for deceased were in camp; that when he (appellant) came up deceased was taking orders from the Mexicans for such groceries as they needed so that he might purchase for them; that presently deceased spoke to appellant's companion; that later witness and deceased went to the house of deceased's and on reaching the house they discovered that appellant and his companion Andrada had followed them to the house; that deceased asked them what they wanted and the boy Andrada replied, "I want my pay; I want the 40 cents you owe me;" that deceased told the boy that he did not have any money but that if he would come back in a day or two he would have the money for him; that this satisfied the boy but appellant spoke up at this time and said, "No, you will pay him right now." He repeated this several times. Deceased then said to appellant, "I don't owe you anything, and you may keep out of this business," or words to that effect. Appellant then replied that the 40 cents must be paid at once. Witness further testified that deceased then went back into his house and got his pistol, and when he came out appellant grabbed witness and held him between the deceased and him (appellant), begging deceased not to shoot him; that deceased assured him that he did not want to shoot him, but that he must leave the place; that appellant then turned the witness loose, and started off to go to the camp where the Mexican laborers were in the pasture of deceased; that deceased then stepped out in the yard with his pistol in hand and told appellant not to go into his pasture but to leave his premises; that appellant

then jumped behind a post, either fell or stooped down, and shot and killed the deceased. The boy Andrada testified substantially as did the witness Tom Armstrong as to how this difficulty occurred, except that he did not understand what was being said because it was spoken in English.

The first ground in the motion complains of the action of the court in the organization of the jury. As there was no bill of exceptions reserved, this is not verified in a way we would be authorized to review the question.

In the next ground complaint is made of the sufficiency of the evidence to support the verdict, it being claimed that it showed appellant acted in self-defense. The resume of the evidence above demonstrates that the evidence amply supports the verdict; in fact, in our opinion, would sustain a conviction for murder in the first degree.

It was not incumbent upon the court to charge the law applicable to threats as there is no evidence that deceased ever threatened the appellant, and the introduction of the statement of appellant that he was going over to deceased's house to see that he paid Andrada the money he owed him, and if he did not do so, they would "do one another up" was admissible as tending to show malice or motive, and did not call for any charge on threats. The court gave a charge on self-defense that was full and fair, which in connection with the special charges given at the request of appellant, presented every theory of the case from appellant's standpoint, and it was unnecessary to give the other charges requested.

We have carefully reviewed each ground in the motion for new trial, and are of the opinion the judgment should be affirmed.

*Affirmed.*